UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MAHER,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF FRESNO,<br><br>        Defendant.<br>_____/ | 1:08-cv-00050-OWW-SMS<br><br>**ORDER RE: PLAINTIFF'S MOTION TO COMPEL FURTHER INITIAL DISCLOSURES FROM DEFENDANT CITY OF FRESNO**<br>(Doc. 17) |

    This matter came on regularly for hearing on May 16, 2008 in Courtroom No. 7 before the Honorable Sandra M. Snyder.  Lisa J. Leebove and Angela Perone, Equal Rights Advocates, appeared telephonically on behalf of Plaintiff.  Senior Deputy City Attorney Gregory L. Myers and Deputy City Attorney Tamara Bogosian appeared on behalf of Defendants.  Following oral argument, the Court took the matter under submission.

    The Court has reviewed and considered the joint statement re: discovery disagreements re: Plaintiff's motion to compel further initial disclosures from Defendant City of Fresno (Doc. 24), as well as declarations of Lisa J. Leebove (Doc. 23) and Carla Lombardi (Doc. 25).  Too, the City provided to the Court under seal for *in camera* review all the documents that relate to

and are the subject of Plaintiff's motion.  Following the table of contents format of the 251 stipulation, the Court has conducted that *in camera* review and makes the following orders:

    A.    Email dated 12/28/2005 from Judy Huss to scoons@cpf.org

        Now Bates stamped as COF3902, the email in question was authored a mere twenty-two (22) days after the Plaintiff resigned from the Academy.  It was not a direct communication with an attorney but rather between co-workers.  In fact, there is nothing in this email that, as Defendants assert, "references communications *by* the attorney."  Had the Defendants not mentioned "the attorney" in their 251 argument, the Court would have redacted that reference upon ordering its production.  Finally, it is not at all clear who spoke to the deputy city attorney nor is it at all clear when and if litigation was anticipated.

        DOCUMENT ORDERED PRODUCED.

    B.    Email dated 12/30/2005 from Cheryl Carlson to Kerri Donis

        Now Bates stamped as COF3904, Defendants claim protection pursuant to third-party privacy.  The Court is equally lost, along with Plaintiff, as to who Ms. Donis is and why Ms. Carlson would be sending her a list of "new hires."  The Court can think of no privacy interest, not protected and covered by an appropriately drafted and signed protective order, in the names of individuals hired by and working for a public agency paid for by tax dollars.  That said, the lists attached to this email are not very informative at least to the Court.  To the extent Plaintiff can make use of the information in any way to "identify comparators for purposes of proving plaintiff's employment

2

discrimination claims," the Court deems this document with attachments discoverable.

DOCUMENT ORDERED PRODUCED WITH ATTACHED LISTS.

C. Email dated 3/31/2006 from Richard Cabral to Daniel Mendoza

Now Bates stamped as COF3931, the Court does not see how this communication in any way expected or anticipated confidentiality or was engaged in at the direction of an attorney or for the purpose of communicating to an attorney about a legal matter. The email does not make it clear how these two co-workers came by the knowledge that litigation was anticipated. Further, it defies logic that comparing and contrasting the test scores of the Plaintiff's classmates would not be at the heart of this lawsuit, thus being highly relevant and discoverable with a protective order in place. That these two co-workers discussed it briefly in an email in no way suggests it should be protected by the attorney-client privilege.

DOCUMENT ORDERED PRODUCED.

D. Email dated 3/31/2006 from Richard Cabral to Pete Flores, Richard Griffith, Daniel Mendoza, Lionel McPeters; cc: Judi Huss

Now Bates stamped as COF3932, this document is a good example of why the Court on occasion needs to view the communication at issue to make a determination of its protectability. It is clear from the content of the email itself that this communication was undoubtedly made at the direction of legal counsel for the purpose of preparing for litigation and that the senders as well as the receivers were, indeed, agents of the attorney.

DOCUMENT NOT ORDERED PRODUCED.

3

E.  Email dated 4/19/2006 from Richard Cabral to Daniel Mendoza

Now Bates stamped as COF3933, this document is directly related to D. above.

DOCUMENT NOT ORDERED PRODUCED.

F.  Email dated 5/12/2006 from Bryce Hubbell to Leslie Smith

Now Bates stamped as COF3936, the Court deems the reasons set forth in B. above to be dispositive of the discoverability of this email and the attached lists. **Note**: Counsel are **cautioned** that this information will be produced pursuant to a carefully crafted protective order including an attorney's/expert's eyes only provision, that any limited copies made shall be for the purpose of this litigation only, and that all originals and copies shall be returned to Defendants at the conclusion of this lawsuit and/or agreed to be shredded. Further, all counsel are cautioned not to harass or annoy any of the named individuals on the list.

DOCUMENT ORDERED PRODUCED WITH ATTACHED LISTS..

G.  Email dated 5/26/2006 from Diana Thomas to Donald Ockey

Now Bates stamped COF3953, the Court orders this email and attached lists discoverable pursuant to the same reasoning as set forth in B. and F. above.

DOCUMENT ORDERED PRODUCED WITH ATTACHED LISTS.

H.  Email dated 6/22/2006 from Bryce Hubbell to Leslie Smith

Now Bates stamped COF3978, the Court orders this email and attached lists discoverable pursuant to that which is set forth in B., F., and G. above.

DOCUMENT ORDERED PRODUCED WITH ATTACHED LISTS.

//

4

I. Email dated 7/10/2006 from Donald MacAlpine to Carla Lombardi

Now Bates stamped COF3960, this email clearly relates to communications from and to the City Attorney that, by July 10, 2006, would likely be in anticipation of litigation. The email references an attachment which was not provided to the Court. Nevertheless, the Court has neither time nor interest in micromanaging this litigation; therefore, no further submission is necessary at this time. With an offer of proof in the future, the Court is willing to review this order.

DOCUMENT NOT ORDERED PRODUCED.

J. Email dated 2/7/2007 from Carla Lombardi to Leslie Smith

Now Bates stamped COF3974, this email is deemed not to be private as to the third parties named.

DOCUMENT ORDERED PRODUCED.

K. Email dated 2/16/2007 from Pedro Flores (cc: Allen Rush, Randy Bruegman, Leslie Smith) to Carla Lombardi

Now Bates stamped COF3975, the Court orders this email and attached lists discoverable pursuant to that which is set forth in B., F., G., and H. above.

DOCUMENT ORDERED PRODUCED WITH ATTACHED LISTS.

L. Handwritten Notes dated 12/7/2005 from Carla Lombardi to File; Memo on Conversation with Michelle Maur [sic] dated 12/9/05 from Kerri Donis to File; Handwritten Notes dated 3/27/06 from Carla Lombardi to File; Handwritten Notes dated 5/2/06 from Carla Lombardi to File; Handwritten Notes dated 1/22/07 from Carla Lombardi to File

The documents discussed below were voluntarily produced twice during Rule 26(a) exchanges, first on March 17, 2008 and then in an amended production on April 8, 2008.

5

It was Plaintiff's counsel who noticed the "inadvertance" as they were going through Defendants' privilege log served with the April 8, 2008 production, finding that nonetheless certain documents had already been produced to Plaintiff. After being informed by Plaintiff's counsel of the discrepancy, Defendants' counsel asked for the documents back. A motion to compel these already-produced documents along with others the subject of the privilege log was filed sixteen (16) days later, on April 24, 2008.

Regarding a waiver of attorney-client privilege:

Under the Ninth Circuit five-factor test (U.S. rel. Bagley v. TRW, Inc., 204 F.R.D. at 176 (citing cases from the Southern and Northern Districts, but noting dicta that might indicate that if faced with the issue directly, the Ninth Circuit might tend to be strict and would likely consider inadvertence to be one factor) the following should be considered when weighing inadvertence:

    (1)   reasonableness of precautions undertaken

    (2)   number of inadvertent disclosures

    (3)   extent of the disclosures

    (4)   promptness of measures taken to rectify

    (5)   "overriding issue of fairness"

*12/7/05 (Bates COF01027-1030) Carla Lombardi's Handwritten Notes:

This conversation between Lombardi and Plaintiff took place the day after Plaintiff left the Academy. The Court has read the four (4) pages of notes (01027-01030) and sees nothing remotely privileged or protected. They are strictly a recap of

precisely what the Plaintiff brought up to Ms. Lombardi without little-if-any editorial comment on the part of Lombardi.  The Court sees no semblance of anything "reflecting discussions with the City Attorney's office..."  What might only be construed as such discussions appears on Bates stamped page -1030: "Response...Best interest of the City, for the good of the service, to accept your resignation - Chief still stands by his decision."

   ORDERED PRODUCED.

   *12/9/05 (Bates 01031) Kerri Donis Memo on Conversation with Michelle Maur [sic]

   The Court is left to wonder who Kerri Donis is as she is not listed on either Defendants' original or the amended Rule 26 witness list.  Again, the Court finds nothing in these notes that violates a privilege or protection.  Similar to Lombardi's notes, these appear to merely be a recap of mostly what the Plaintiff said to Donis.  What clearly relates to advice received from the City Attorneys' Office/Attorney Tuttle to Donis is nothing more than the same pat answer the Plaintiff received from Lombardi two days prior:  "[T]he Chief has made his decision, he is not going to change his mind, it is in the best interest of the City to accept your resignation.  I can't tell you what to do, I hope you can respect the position I'm in and that I can't comment any further."

   ORDERED PRODUCED.

   *3/27/06 (Bates 01032) Lombardi Handwritten Notes w/ Chief Bruegman and Others re: 3/23/06 Letter from Equal Rights Advocates, passed on from City Attorney's Office

7

1        *5/2/06 (Bates 1033-1039) Lombardi Handwritten Notes w/
2 City Attorney Tuttle and Various Fire Academy Personnel
3        *1/22/07 (Bates 1040) Lombardi Handwritten Notes w/
4 City Attny Tuttle
5        Plaintiff has directed the Court's attention to
6 argument set forth earlier in the 251 Statement regarding the
7 applicable legal standard to apply with regard to this small
8 universe of documents produced inadvertently.  To that extent,
9 Plaintiff's View, as it is entitled in the 251 Stip, is of little
10 help.  The sufficiency of the privilege log designation is not
11 really the issue here.  Rather, these documents that most
12 certainly would be protected by the attorney/client privilege
13 and/or work product protections lay bare due to inadvertence.
14 Neither party assists the Court by addressing precautions taken,
15 attempts to rectify error, the scope of the discovery, the extent
16 of the disclosures, and the fairness component.  <u>F.D.I.C. v.</u>
17 <u>Fidelity & Deposit Co. Of Maryland,</u> 196 F.R.D. 378, 391 (quoting
18 from <u>Hartford Fire Ins. Co. V. Garvey</u>, 109 F.R.D. 323 (N.D.Cal.
19 1985)).
20     For purposes of this order, the Court assumes that
21 California state law applies because all of the disputes events
22 in this case occurred in California.  Under California law,
23 waiver of the attorney-client privilege depends entirely on
24 whether the client provided knowing and voluntary consent to the
25 disclosure.  "A trial court called upon to determine whether
26 inadvertent disclosure of privileged information constitutes
27 waiver of the privilege must examine both the subjective intent
28 of [client] and the relevant surrounding circumstances for any

manifestation of the [client's] consent to disclose the information." State Compensation Ins. Fund v. WPS, Inc., 70 Cal.App.4th 644, 652-53, 82 Cal.Rptr.2d 799, 805 (1999) (emphasis added).  Waiver of the privilege, therefore, does not occur by "accidental, inadvertent disclosure of privileged information by the attorney." Id. At 654, 82 Cal.Rptr.2d at 805; KL Group v. Case, Kay & Lynch, 829 F.2d 909, 918-19 (9th Cir.1987) (applying California law and holding that client did not waive attorney-client privilege when its attorneys inadvertently disclosed documents during discovery; affirming district court's protective order requiring the return of privileged documents).  As one court recognized, California law repudiates the doctrine of inadvertent disclosure as a basis for waiver of the attorney-client privilege:

> [D]iscovery is coercion.  The force of law is being brought upon a person to turn over certain documents.  Inadvertent disclosure during discovery by no stretch of the imagination shows consent to the disclosure:  It often demonstrates that the poor paralegal or junior associate who was lumbered with the tedious job of going through voluminous files and records in preparation for a document production may have missed something.  [Plaintiff] invites us to adopt a "gotcha" theory of waiver, in which an underling's probable slip-up in a document production becomes the equivalent of actual consent.  We decline.  The substance of an inadvertent disclosure under such circumstances demonstrates that there was no voluntary release.

O'Mary v. Mitsubishi Elec. Am., 59 Cal.App. 4th 563, 577, 69 Cal.Rptr.2d 389, 398-99 (1997).

DOCUMENTS NOT ORDERED PRODUCED.

IT IS SO ORDERED.

**Dated:   July 7, 2008**           /s/ Sandra M. Snyder
                     UNITED STATES MAGISTRATE JUDGE

9