DAN SIEGEL, SBN 56400
JESSICA ALBERT, SBN 249770
SIEGEL & YEE
499 14th Street, Suite 220
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698

LISA J. LEEBOVE, SBN 186705
EQUAL RIGHTS ADVOCATES
1663 Mission Street, Suite 250
San Francisco, CA 94103
Telephone: (415) 621-0672
Telefax: (415) 621-6744

Attorneys for Plaintiff
MICHELLE MAHER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| MICHELLE MAHER,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF FRESNO,<br><br>        Defendant. | Case No.: 08-CV-00050-OWW-SMS<br><br>PLAINTIFF'S TRIAL BRIEF<br><br>Date:   October 27, 2009<br>Time:   9:00 a.m.<br>Courtroom:  #3 (7th Floor)<br>Judge:  Hon. Oliver W. Wanger |

## **INTRODUCTION**

    Michelle Maher did everything she could to prepare herself to be a City of Fresno firefighter. She took a nine month community college course in firefighting skills, participated in mock interviews and rode along with fire crews on a weekly basis. She was one of the highest ranked applicants when she applied to the Fresno Fire Department, and the second highest ranked female applicant in five years.

1    When Ms. Maher joined the City of Fresno Fire Department, she encountered

2    indifference and hostility in response to her complaints of sexually-tainted gossip and rumors

3    about her and ill-fitting male sized clothing and safety gear that could have caused her injury.

4    One instructor advised her to give up custody of her children to succeed in the Fire Academy.

5    She also struggled to please the supervisor primarily responsible for evaluating her who stated

6    multiple times that he believed women should not be firefighters.

7        After Ms. Maher discovered that she had failed to meet the constantly shifting,

8    subjective, and discriminatorily applied standards for success in the Fire Academy, defendant

9    forced her to resign. She was ignored by every level of the Fire Department when she sought to

10   withdraw the resignation she was coerced into signing.  The City of Fresno City Attorney's

11   Office gave similar short shrift to her complaints, conducting only a cursory investigation.

12       At the trial of this case, plaintiff Maher will present overwhelming evidence that the

13   standards for success in the Fire Academy were applied in a discriminatory manner and that she

14   faced a hostile work environment because she is a woman and a mother with caregiving

15   responsibilities.

16   **STATEMENT OF FACTS**

17       Before deciding to become a City of Fresno firefighter, Ms. Maher spent many years

18   working as a pre-school teacher. Ms. Maher is a single mother who decided to become a

19   firefighter so that she could earn enough money to support her family while working hours that

20   allowed her to care for her children for most of every week.

21       Prior to her application to the Fresno Fire Department in 2005, Ms. Maher engaged in

22   multiple activities to learn everything she could about being a firefighter. She participated in a

23   night course at Fresno City College for nine months where she learned the basic skills of

24   firefighting and received her Emergency Medical Skills Technician (EMT) certification and

25   receiving an "A" grade.  Both the Fresno Fire Department and the Sanger Fire Department have

26   a program known as "ride alongs" where citizens may join a fire crew for a shift. Ms. Maher

27   participated in both of these programs, joining crews for their shifts.

28

1    In mid-2005, plaintiff was one of more than 1,100 applicants for a position in the City of

2   Fresno Fire Academy. Ms. Maher's final rank was 31. Because of her high ranking, the Fire

3   Department asked her to be a recruit in its first class after the administration of the test, in the fall

4   of 2005. Upon successful completion of the Fire Academy, Ms. Maher would have become a

5   probationary firefighter, then a firefighter, and up through the ranks.

6    Captains Dan Mendoza and Lionel McPeters were the two people responsible for running

7   the Fire Academy and making personnel recommendations to Battalion Chief Richard Cabral,

8   who in turn made recommendations to Fresno Fire Department Chief Randy Bruegman.  Chief

9   Cabral identified Captain Mendoza as the leader of the Academy.

10   Ms. Maher was the only female recruit out of the over twenty individuals in her class.

11   Once in the Academy, Ms. Maher encountered obstacles and the discriminatory application of

12   standards for success.

13   Captain Mendoza, the person primarily responsible for evaluating her and reporting her

14   progress up the chain of command, said on more than one occasion, both before and after Ms.

15   Maher attended the Fire Academy, that he did not believe women should be firefighters. Captain

16   Mendoza participated in every one of plaintiff's evaluations and signed off on five out of seven

17   of them. Ms. Maher's evaluations were unsupportive, inaccurate, and never acknowledged her

18   successes.  Ms. Maher also had difficulties because her Self Contained Breathing Apparatus

19   (SCBA) mask was too big and her clothing was too big because both were sized to men.

20   Firefighters also spread false rumors that she was dating and flirting with other recruits.  Ms.

21   Maher reported this sexual harassment during the Academy to Instructor Pedro Flores who then

22   reported this conversation to Captain Mendoza and the other instructors. Despite the Fresno Fire

23   Department sexual harassment policy which requires an attempt at resolution and/or

24   investigation of complaints of sexual harassment, nothing was ever done. When questioned about

25   Ms. Maher's reporting these false rumors, Instructor Flores stated did not see any problem with

26   people talking about Ms. Maher dating the men in her Academy.  He also advised her to give up

27   custody of her children in order to succeed in the Academy. Ms. Maher was made to believe that

28

1  success in the Academy was incompatible with what he assumed were her childcare
2  responsibilities

3      In the seventh week of the Academy, Ms. Maher and one other recruit were told that they
4  needed to reach an 80% written score on the mid-term examination or face dismissal when other
5  recruits with similar written scores, and poorer performances on manipulative tests, were not told
6  the same. One recruit was allowed to graduate after having engaged in a public display of
7  insubordination. When Ms. Maher received a final mid-term score of just below 80% defendant
8  forced her to resign. Immediately thereafter Ms. Maher attempted to contact anyone she could,
9  including Chief Bruegman, to prove that she did not want to resign and was unfairly treated. She
10 confronted a wall of indifference, and her resignation was accepted and finalized.

11
12     **STATEMENT OF LAW**
13     Ms. Maher's complaint states four claims: (1) discrimination on the basis of gender in
14 violation of the California Fair Employment and Housing Act (FEHA), Government Code §
15 12940, et seq.; (2) unlawful sexual harassment/sexually hostile work environment in violation of
16 FEHA; (3) discrimination on the basis of gender and parental status in violation Title IX of the
17 Education Amendments of 1972, 20 U.S.C. § 1681; and (4) wrongful termination on the basis of
18 gender discrimination in violation of public policy under FEHA and Article I Section 8, of the
19 California Constitution.

20     Plaintiff seeks economic damages, emotional distress damages, and reasonable
21 attorneys' fees and costs.

22 **I.   Plaintiff Will Prevail on Her Claims of Sex Discrimination in Violation of**
23 **FEHA, Title IX, and the California Constitution.**

24     To succeed on a claim of discrimination under FEHA, Title IX, and the California
25 Constitution, a plaintiff must first establish a *prima facie* case. The employer may then present a
26 legitimate non-discriminatory reason for its action, after which the burden shifts back to the
27 plaintiff to prove that the reason is pretextual. McDonnell Douglas Corp. v. Green (1973)411
28 U.S. 792, 93 S.Ct. 1817; Stegall v. Citadel Broadcasting Co. (9th Cir. 2003) 50 F.3d 1061,

1   1065-1066 ; Clark v. Claremont University Center (App. 2 Dist. 1992) 6 Cal.App.4th 639, 662.

2   Because state and federal anti-discrimination statutes are identical in their objectives, California

3   courts look to federal cases to interpret analogous provisions of the state statutes. Guz v. Bechtel

4   National Inc. (2000) 24 Cal.4th 317, 354; Greene v. Pomona Unified School District (Ct. App.

5   2d Dist. 1995) 32 Cal.App.4th 1216, 1222 n. 6. To establish a *prima facie* claim of

6   discrimination, the plaintiff must show that she was: (1) a member of a class protected by the

7   statute; (2) competently performing the position held; (3) suffered an adverse employment

8   action, such as termination from her job; and (4) that action occurred under circumstances

9   suggesting discrimination, such as retention of employees with similar performance. O'Connor

10  v. Consolidated Coin Caterers Corp. (1996) 17 U.S. 308, 309, 116 S.Ct. 1307, *citing* McDonnell

11  Douglas Corp., 411 U.S. at 802.

12          **A. Ms. Maher Can Prove Sex Discrimination Under FEHA**

13          Plaintiff Maher can establish her *prima facie* case of sex discrimination under FEHA by

14  showing disparate treatment based on her gender and her family caregiving responsibilities.

15          **1. Plaintiff can establish her prima facie claim of gender discrimination.**

16          Here, there is no dispute that plaintiff Maher can meet the first *prima facie* element of

17  her sex discrimination claim. She is a member of a group protected under FEHA: women. She

18  is also a mother of two young children with childcare responsibilities.

19          With respect to the second *prima facie* element, Plaintiff can establish that she was

20  performing satisfactorily: 1) she passed all of her physical tests and was on par, if not superior

21  to, other male recruits, 2) her academics were on par with multiple other male recruits who were

22  determined to be successful candidates, and 3) she was physically fit.

23          The third *prima facie* element-- that plaintiff suffered an adverse action—is also easily

24  met. It is undisputed that defendant told Ms. Maher that she could resign or be fired. Finally,

25  plaintiff Maher can satisfy the fourth *prima facie* element that this adverse action occurred under

26  circumstances that suggest discrimination. Here, plaintiff's evidence will show that defendant

27  did not force male recruits in comparable circumstances to resign. To the contrary, defendant

28  forced plaintiff to resign while permitting male recruits to continue in the Academy despite their

1  having received below standard scores on their written examinations and being in poorer

2  physical shape than plaintiff, and in one case, despite having engaged in a public display of

3  insubordination. She was told to give up custody of her children when the male recruits were

4  not. She was also the subject of sexualized rumors which her supervisors did nothing to stop.

5        While comparative evidence is often useful, it is *not* necessary to establish a violation

6  for sex-based disparate treatment based on caregiver status. Back v. Hastings on Hudson Union

7  Free School District (2nd Cir. 2004) 365 F.3d 365 F.3d at 121 (plaintiff with young child could

8  show she was denied tenure because of her sex by relying on evidence of negative stereotypes

9  about working mothers and was not required to show that similarly situated male workers were

10  treated more favorably); Plaetzer v. Borton Auto., Inc., No. Civ. 02-3089 JRT/JSM, 2004 WL

11  2066770, at *6 n.3 (evidence of more favorable treatment of working fathers is not needed to

12  show sex discrimination against working mothers where is evidence of negative stereotypes

13  about working mothers). Thus, Ms. Maher does not need to demonstrate that there were male

14  recruits in the Academy who had the same caregiving responsibilities that she did to prevail on

15  her claim of family responsibility discrimination. It is sufficient that Instructor Flores'

16  statement encompasses the negative stereotype that working mothers are "insufficiently devoted

17  to work, or that work and motherhood are incompatible," (Plaetzer 2004 WL 2066770 at *6

18  n.3), or that they are unable to balance work and family. Santiago-Ramos v. Centennial P.R.

19  Wireless Corp. (1st Cir. 2000) 217 F.3d 46, 55.

20        Additionally Ms. Maher will produce evidence that she was the subject of sexual

21  stereotypes. The Ninth Circuit has found that evaluations of an employee's leadership skills that

22  reflect male/female stereotypes is evidence of discrimination. Lindhal v. Air France (9th Cir.

23  1991) 930 F.2d 1434, 1439. Supervisors' statements about how a female applicant gets

24  "nervous" or "easily upset" and a male applicant would not back away from situations and

25  "attack the situation the right way" are evidence of sexual stereotyping. The court found that

26  these statements tended to show that the decision maker thought women do not make good

27  leaders because they are too emotional. Id.

28        The language the instructors used to describe Maher in her evaluations indicate sexual

Maher v. City of Fresno, Case No. 08-CV-00050-OWW-SMS
Plaintiff's Trial Brief

1   stereotyping. They described her as "timid" with instructors and "aggressive/rude with peers."

2   The evaluations state that she "makes excuses" and lacks "confidence." These word choices

3   indicate an assumption that a woman who is respectful is timid, who is a leader is

4   aggressive/rude, who gives explanations makes excuses, and who asks questions and thinks

5   before she acts lacks confidence.

### 2. Defendant cannot meet its burden of showing a legitimate, non-discriminatory reason for forcing Ms. Maher to resign.

8          The City of Fresno's problem in this case is that the evidence that Ms. Maher did not

9   perform to standard is suspect. As described above, Ms. Maher was evaluated by men with

10  preconceived gender-biased stereotypes, and her written evaluations were replete with

11  unverified assumptions, inaccuracies and false statements. Ms. Maher was performing on par or

12  better than many of the male recruits in the Academy, yet she was singled out as required to

13  reach 80% on the mid-term examination. Defendant terminated plaintiff based upon the

14  opinions and evaluations of these lower level managers. The evidence will show that Chief

15  Bruegman performed no independent evaluation of plaintiff but relied exclusively on what

16  Battalion Chief Cabral told him and that Battalion Chief Cabral relied exclusively on what

17  Captain Mendoza and the other instructors told him.

### 3. Ms. Maher will successfully rebut defendant's explanations because they are not credible.

20          A plaintiff in a discrimination case may prevail by establishing a *prima facie* case

21  together with "sufficient evidence for a reasonable factfinder to reject the employer's

22  nondiscriminatory explanation for its decision." Reeves v. Sanderson Plumbing Products (2000)

23  530 U.S. 133, 140, Texas Dept. of Community Affairs v. Burdine (1981) 450 U.S. 248, 256

24  (plaintiff can prevail by showing that the employer's proffered explanation is unworthy of

25  credence). A plaintiff may prove pretext through evidence that the employer treated similarly

26  situated persons in similar circumstances more favorably than it treated the plaintiff. McDonnell

27  Douglas, 411 U.S. at 804; Vasquez v. County of Los Angeles (9th Cir. 2003) 349 F.3d 634, 641

28  (evidence that employer treated similarly situated employees outside the plaintiff's protected

1 | class more favorably is probative of pretext).

2 |  Ms. Maher will prove that defendant's allegation that she performed unsatisfactory is a

3 | pretext to mask unlawful discrimination. As set forth above, Ms. Maher's evidence will show

4 | (1) inconsistency in defendant's application of the standards used to evaluate her performance

5 | and the performance of male recruits; and (2) the persons responsible for evaluating plaintiff

6 | held negative stereotypes of women that resulted in their being unable to fairly and objectively

7 | evaluate Ms. Maher's performance. See, e.g., Price Waterhouse v. Hopkins (1989) 490 U.S.

8 | 228, 250 (sex stereotyped comments can be evidence of gender discrimination) (superseded by

9 | statute on other grounds).

10 | **B. Plaintiff Can Prove Her Sex Discrimination Claim Under Title IX.**

11 |  Plaintiff Maher can establish her *prima facie* case of sex discrimination under Title IX

12 | by showing disparate treatment based on her gender and on her parental status.

13 | **1. Ms. Maher can establish her prima facia claim of gender discrimination.**

14 |  Title IX of the Educational Amendment of 1972 prohibits discrimination on the basis of

15 | sex in "any education program or activity receiving Federal financial assistance." 20 U.S.C. §

16 | 1681(a). Defendant has admitted that in the year prior to October 2005 when Ms. Maher was in

17 | the Academy, the Fresno Fire Department received federal financial assistance within the

18 | meaning of Title IX 20 U.S.C. § 1681 and that the Fresno Fire Academy is an educational

19 | institution within the meaning of Title IX.

20 |  Title IX implies a private right of action to enforce its prohibition on intentional sexual

21 | discrimination. Cannon v. University of Chicago (1979) 441 U.S. 677, 690-693. The method of

22 | evaluating a Title IX gender discrimination claim is the same as under Title VII. Burch v.

23 | Regents of University of California (E.D. Cal. 2006) 433 F. Supp. 2d 1110, 1125, *citing* Johnson

24 | v. Baptist Med. Ctr. (8th Cir. 1996) 97 F.3d 1070, 1072.

25 |  The Fire Academy is an academic setting subject to the requirements of Title IX. For the

26 | same reasons that Ms. Maher can prove her *prima facie* case under FEHA, she can meet her

27 | proof requirements under Title IX.

28 |

1    **2. Ms. Maher will be able to prove discrimination based on her parental status.**

2         Parental status discrimination is directly actionable under Title IX. 34 C.F.R. § 106.57.

3    Ms. Maher was a single female parent. There were male single parents in her class. Her

4    instructor, Pete Flores, was aware that she was a single parent and the only female single

5    parent/primary caregiver in her class. Flores told Ms. Maher that she should give up custody of

6    her children. She understood this to mean that her status as a single female parent was viewed as

7    incompatible with success in the Fire Academy.  Other male single parents were not told to give

8    up custody of their children nor were male dual parents.

9         C.    **Plaintiff Can Prove Her Unlawful Sexual Harassment/Sexually Hostile Work**

10                **Environment Claim.**

11        The environment created by the defendant was not only discriminatory but it also created

12   a sexually hostile work environment for Ms. Maher.

13        1.    **Plaintiff will be able to prove that the Fire Academy was a sexually hostile work**

14              **environment.**

15        "Sexual harassment does not necessarily involve sexual conduct. It need not have

16   anything to do with lewd acts, double entendres or sexual advances. Sexual harassment may

17   involve conduct, whether blatant or subtle, that discriminates against an employee solely because

18   of that person's sex....[W]e hold that sexual harassment occurs when an employer creates a

19   hostile environment for an employee because of that employee's sex." Accardi v. Superior Court

20   (Simi Valley) (App. 2 Dist. 1993)17 Cal.App.4th 341, 345, 21 C.R.2d 291. See, Mogilefsky v.

21   Superior Court (App. 2 Dist. 1993) 20 Cal.App.4th 1409, 1414-1415, 26 C.R.2d 116.

22        For hostile work environment sexual harassment to be actionable, it must be sufficiently

23   severe "to alter the conditions of [the victim's] employment and create an abusive working

24   environment." Fisher, 214 Cal.App.3d at p. 609, quoting Meritor Savings Bank v. Vinson 477

25   U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). "Whether the sexual conduct

26   complained of is sufficiently pervasive to create a hostile work environment must be determined

27   from the totality of the circumstances." Id., citing, 682 F.2d 897, 904 (11th.Cir. 1982). The

28   plaintiff must prove that the defendants' conduct would have interfered with a reasonable

1  female employee's work performance and that she was actually offended. <u>Ellison v. Brady</u>, 924

2  F.2d 872, 879, 881-883 (9th.Cir. 1991).

3        Plaintiff will present evidence that she was subjected to co-worker harassment "Once an

4  employer becomes aware of co-worker sexual harassment, the employer must take adequate

5  remedial measures in order to avoid liability for the harassment." <u>Sarro v. City of Sacramento</u>

6  (E.D. Cal. 1999) 78 F.Supp.2d 1057, 1061-62, *citing multiple cases;* <u>Doe v. Capital Cities</u>

7  (1996) 50 Cal.App.4th 1038, 1046. The measures must include immediate corrective action

8  reasonably calculated to 1) end the current harassment, and 2) deter future harassment. <u>Id.</u> at

9  1062. The plaintiff must show that the employer knew, or should have known, about the

10 harassing behavior and took no effectual corrective action. <u>Id.</u>

11       Ms. Maher was the only woman in her class of over 20 individuals. Other recruits

12 engaged in sexualized rumors about Ms. Maher. Ms. Maher reported this conduct to her

13 supervisor, Pete Flores, which is consistent with the City of Fresno Procedures for Internal

14 Complaints. When she brought this to the attention of Flores, he reported it to Captain Mendoza

15 and the other instructors, but nothing came of this despite the City's policy requiring an attempt

16 to resolve the situation and/or an investigation. When asked about Ms. Maher's complaints to

17 him of sexual harassment in his deposition Flores said he did not think it was inappropriate for

18 people to talk about her dating guys in the Academy. He did not recognize the devastating

19 impact the rumors were having on her feelings when she interacted with the other recruits.

20       Finally, Ms. Maher's evaluations were part and parcel of the hostile work environment.

21 When she sat in the room with Captains Mendoza and McPeters, they told her nothing that she

22 did right and everything she did wrong, whether true or not. These two men purposefully

23 placed her in a position of powerlessness by refusing to let her contest her evaluation. Every

24 week she had to sit in a room and be criticized whereas her co-recruits were encouraged and

25 taught.

26      **2. <u>Defendant Breached Its Duty to Prevent, Investigate and Remedy Harassment.</u>**

27       Plaintiff's evidence will overwhelmingly establish that defendant breached its duty to

28 prevent, investigate and remedy sexual harassment in the Fire Academy. As set forth above,

1  plaintiff complained to her supervisors about disparate treatment and harassment. Perhaps the

2  best evidence that defendant failed to take immediate and appropriate action is that the

3  harassment continued unabated throughout Ms. Maher's time in the Academy.

4        Under the FEHA, defendant City of Fresno had an affirmative duty to investigate

5  thoroughly a claim of harassment. American Airlines v. Superior Court (2003)114 Cal.App.4[th]

6  881, 890: "The affirmative and mandatory duty [under the FEHA] to ensure a discrimination-

7  free work environment requires the employer to conduct a prompt investigation of a

8  discrimination claim." As set forth in State Dept. of Health, supra, at 1046, "[I]f an employer

9  has failed to investigate harassment complaints, [or] act on findings of harassment, or, worse

10  still, [has] retaliated against complainants, future victims will have a strong argument that the

11  policy and grievance procedure did not provide a 'reasonable avenue' for their complaints."

12        The FEHA expressly imposes on employers an obligation to take immediate appropriate

13  corrective action to end harassment. Gov. Code §12940(j); see also Cal. Code Regs., title 2,

14  §7287.6(b)(3). In determining whether or not an employer has met its obligation to investigate

15  and remedy harassment, courts may consider, without limitation, the following factors: (1)

16  whether the employer has made an independent determination about what occurred; (2) whether

17  the employer has taken immediate and appropriate corrective action; (3) whether the employer

18  has taken any action adverse to the complainant; and (4) whether the employer has taken

19  disciplinary action against the offending employee, ranging from reprimand to discipline.

20  Steiner v. Showboat Operating Co. (9th Cir. 1994) 25 F.3d 1459, 1464; Intlekofer v. Turnage (9th

21  Cir. 1992)973 F.2d 773, 780.

22        Here, it is clear that defendant did absolutely nothing in response to plaintiff's complaints

23  of sexual harassment. To the contrary, Instructor Flores never took plaintiff's complaints

24  seriously and, when Chief Cabral learned about rumors about Ms. Maher, he concluded she may

25  have been responsible for them rather than investigate them. As a result, despite plaintiff's

26  complaints, there is no evidence that any investigation was ever undertaken.

27        Here, despite plaintiff Maher's complaints, the evidence will show that defendant was

28  woefully derelict in its duties to prevent sexual harassment.

1

## **CONCLUSION**

2      Ms. Maher has sufficient evidence to prove all of her claims. Defendant's evidence is

3 suspect in that the individual primarily responsible for her evaluations has stated repeatedly that

4 women do not belong in the fire service. Defendant based its decision to terminate her on the

5 substance of these suspect evaluations. Even if defendant could prove that Ms. Maher's

6 performance in the Fire Academy was sub-par, the only reason she struggled, was because of the

7 sexually hostile work environment defendant allowed to happen and the psychological toll that

8 took.

9

10      Dated:  October 19, 2009

11

                              SIEGEL & YEE

12

13

14                            By: _____

15                                Jessica Albert
                                  Attorneys for Plaintiff
16                                MICHELLE MAHER

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

I, Jessica Albert, declare:

I am employed in the County of Alameda, State of California. I am over the age of 18 years and not a party to the within action. My business address is 499 14th Street, Suite 220, Oakland, CA 94612.

On October 19, 2009, I served the within document(s):

    1)    **PLAINTIFF'S TRIAL BRIEF**

    **and**

    2)    this **CERTIFICATE OF SERVICE**

to:

Gregory L. Myers, Senior Deputy City Attorney
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721-3602
Telephone: 559.621.7500
Fax: 559.488.1084

LISA J. LEEBOVE (SBN 186705)
EQUAL RIGHTS ADVOCATES
1663 Mission Street, Suite 250
San Francisco, CA 94103
Telephone: (415) 621-0672
Facsimile: (415) 621-6744

via the following method(s)

_____ **By personally delivering true copies to the person stated above.**

_____ **By personally transmitting true copies thereof via email**

_____ **By placing true copies thereof in sealed envelopes, addressed to the parties named above, with first class postage thereon fully prepaid and depositing the same in the United States Mail at San Francisco, California.**

_____ **By placing true copies thereof in sealed envelopes, addressed to the parties named above, fully prepaid, for pick up by the United Parcel Service for overnight delivery.**

  **X**   **By automatic electronic service of the document through the Court's CM/ECF system pursuant to L.R. 5-135(g).**

I declare under the laws of California and the United States that the foregoing is true and correct. Executed on October 19, 2009 at Oakland, California.

Jessica Albert

Maher v. City of Fresno, Case No. 08-CV-00050-OWW-SMS
Plaintiff's Trial Brief